In re Jose & Cynthia DUARTE, Debtors.

Bankruptcy No. 91–50420–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Oct. 11, 1992.

John A. Ruttan, San Antonio, Tex., for debtors.

David A. Ayon, San Antonio, Tex., for creditor.

## DECISION AND ORDER ON MOTION TO ALLOW FOR EXTENSION OF TIME TO FILE CLAIM

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the Motion of creditor Adolph's Furniture to Allow for Extension of Time to File Claim in the above-referenced case. Upon consideration thereof, the court finds that the motion should be denied.

### JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. § 501(c). This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

### BACKGROUND

Jose and Cynthia Duarte ("Debtors") filed for relief under Chapter 13 of the Bankruptcy Code on February 4, 1991. Adolph's Furniture ("Adolph's") is a creditor of the estate. Adolph's claim was originally scheduled by the debtors; however, due to "confusion by the employee handling [the] matter," Adolph's did not file a proof of claim in the case in a timely manner.

Adolph's filed the instant motion to allow for extension of time on June 5, 1992, alleging that the failure to timely file the proof of claim resulted from the failure of an employee to properly process documents relating to the Notice of Bankruptcy.[1] Adolph's argues that creditors will not be prejudiced by an extension of time, because the debt was included in debtor's schedules. The debtor agrees, for the same reasons. The trustee has taken no position on the issue.

### ANALYSIS

Section 501 of the Bankruptcy Code provides in pertinent part that:

(a) A creditor or an indenture trustee may file a proof of claim....

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

11 U.S.C. § 501 (1992). The time limits for filing a proof of claim are set by the bankruptcy rules which implement Section 501. *See* Fed.R.Bankr.P., Rule 3002 (proof of claim in cases under Chapters 7 and 13); Rule 3003 (proof of claim in cases under Chapters 9 and 11); Rule 3004 (proof of claim filed by Debtor or trustee); Rule 3005 (proof of claim filed by guarantor or codebtor). In a Chapter 13 case, an unsecured creditor must file a proof of claim within ninety (90) days after the first date set for the meeting of creditors. Rule 3002(c), Fed.R.Bankr.P. (1992). Subsection (c) also defines the limited circumstances under which the court may extend the time within which to file a proof of claim. The United States, a state, or a subdivision may obtain an extension, if they request the extension before the expiration of the time period. Rule 3002(c)(1). An extension may also be granted to infants and incompetents (or their representatives). Rule 3002(c)(2). A creditor who, as a result of a judgment, is determined not to be a secured creditor may file a claim as an unsecured creditor within thirty days after that judgment. Rule 3002(c)(3). Claims arising from the rejection of executory contracts may be filed outside the 90 day time frame, as the rejection may itself not occur within

---

1. Similar motions were filed in a number of other cases, evidently shortly after Adolph's hired a law firm to help it with collections in bankruptcy cases. The decision in this case controls the disposition of Adolph's motions in the other cases.

that time frame. Rule 3002(c)(4).[2] If a creditor does not come within one of these listed exceptions in Rule 3002(c), the court has no authority to extend the time within which to file a proof of claim. *See In re Glow*, 111 B.R. 209, 214 (Bankr.N.D.Ind. 1990); *see also In re Shelton*, 116 B.R. 453, 455 (Bankr.D.Md.1990); *In re Bowers*, 104 B.R. 362, 363 (Bankr.D.Colo.1989); *In re Wilt*, 84 B.R. 480, 481–82 (Bankr.N.D.Ohio 1988). None of the six exceptions established by Rule 3002(c) apply to Adolph's situation here. The instant motion is not a motion filed by the United States; Adolph's is not an incompetent person or an infant; the claim at issue did not result from an entry of judgment determining Adolph's not to have a security interest; the claim does not arise from a rejected executory contract; and this is not a chapter 7 case. Rule 3002(c) on its face forecloses Adolph's motion.

Adolph's argues that the court can extend the time for filing its claim under Rule 9006(b). That rule indeed permits the court to extend deadlines, for cause shown. It even permits relief from a deadline after the fact if the failure to act was the result of excusable neglect. However,

> The court may not enlarge the time for taking action under Rules 1007(d), 1017(b)(3), 2003(a) and (d), 7052, 9023, and 9024.

Fed.R.Bankr.P., Rule 9006(b)(2). Furthermore,

> The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), *3002(c)*, 4003(b), 4004(a), 4007(c), 8002, and 9033, *only to the extent and under the conditions stated in those rules.*

Fed.R.Bank.P. 9006(b)(3) (emphasis added). Thus, Rule 9006(b) is expressly not available to relieve Adolph's from the limitations specified in Rule 3002(c). *Glow*, 111 B.R. at 214; *Shelton*, 116 B.R. at 455; *Bowers*, 104 B.R. at 363.

All is not lost for Adolph's, however, provided it has the cooperation of the debtor or the chapter 13 trustee. Rule 3004 permits a debtor or trustee to file a proof of claim on behalf of a creditor up to thirty (30) days after the expiration of the time provided for a creditor to do so in Rules 3002. Rule 3004, interestingly, is not one of the rules listed under the "enlargement not permitted" or "enlargement limited" exceptions to Rule 9006(b). *See* Rule 9006(b)(2), (3). Thus, if a *debtor* fails to file a claim for a creditor within the time provided by Rule 3004, the debtor may request an extension after the fact, if the debtor can establish cause and demonstrate excusable neglect. Rule 9006(b)(1). Obviously, only the *debtor* has standing to bring such a motion, however.

Adolphs argues that the excusable neglect standard of Rule 9006(b)(1) should be available to creditors as well, especially in the case of claims which have originally been scheduled by the debtor anyway. Obviously, the court is not free to accept Adolphs' invitation, for the rule expressly prohibits it. Fed.R.Bankr.P. 9006(b)(3); *see also In re Stern*, 70 B.R. 472, 475 (Bankr. E.D.Pa.1987).

Moreover, there is a principled reason for the disparate treatment of Rule 3002(c) and Rule 3004 in Rule 9006(b). Both chapter 7 and chapter 13 are structured to foster prompt resolution of claims and equally prompt satisfaction of those claims.[3] The excusable neglect standard tends to undermine the prompt and efficient administration of such cases, especially because both chapters are essentially distributional in nature. Once distribution has begun, it is difficult to alter the *pro rata* allocation.[4]

---

**2.** There are two more exceptions, but they apply only to chapter 7 cases. Rule 3002(c)(5), (6).

**3.** Chapter 9 and 11, by contrast, are not distributional but reorganizational. Thus, a different rule, Rule 3003, spells out the slightly different procedure appropriate for claims filing under those chapters. Rule 9006(b) does apply to late filed claims by creditors in chapter 9 and 11 cases.

**4.** This is easy to see in Chapter 7 cases, where the trustee makes a single distribution of remaining assets pursuant to a court-approved final report, which spells out the precise amount each creditor is to receive on account of its claim. A chapter 13 trustee does essentially the same thing, but does so over time, out of a fund set up at confirmation, but funded over the life of the plan out of the debtor's earnings. It

In addition to the administrative problems which late claims create for the distributional chapters of the Bankruptcy Code, late claims also upset the legitimate expectations of other creditors, who are entitled to rely on having to share the limited assets of the estate only with those who have timely participated in the process. Rule 3002(c), with its strict deadlines and narrow exceptions, fosters these two goals of prompt administration and even-handed treatment of creditors, and gives finality to the distributional process. It sets out a statute of limitations upon which both trustees who administer cases and creditors looking for distribution from those cases may rely.

■■■ Yet late claims *can* be filed by *debtors* out of time upon a showing of excusable neglect. Rules 3004, 9006(b), Fed.R.Bankr.P. (1991). This is so because, just as public policy permits late filings by infants and incompetents, or by a governmental entity, so also does public policy favor a debtor's fresh start. That fresh start can be jeopardized by a creditor's failing to file a proof of claim. Thus, the Advisory Committee notes to Rule 3004 observe that

> [i]t is the policy of the Code that debtors' estates should be administered for the benefit of creditors without regard to the dischargeability of their claims. After their estates have been closed, however, discharged debtors may find themselves saddled with liabilities, particularly for taxes, which remain unpaid because of the failure of creditors holding nondischargeable claims to file proofs of claim and receive distributions thereon. The result is that the debtor is deprived of an important benefit of the Code without any fault or omission on the debtor's part and without any objective of the Code being served thereby.

Section 501(c) of the Code authorizes a debtor or trustee to file a proof of claim for any holder of a claim. Although all claims may not be nondischargeable, it may be difficult to determine, in particular, whether tax claims survive discharge. [citations omitted] To eliminate the necessity of the resolution of this troublesome issue, the option accorded the debtor by the Code does not depend on the nondischargeability of the claim. No serious administrative problems and no unfairness to creditors seemed to develop from adoption of Rule 303, the forerunner to § 501(c). The authority to file is conditioned on the creditor's failure to file the proof of claim on or before the first date set for the meeting of creditors, which is the date a claim must ordinarily be filed in order to be voted in a chapter 7 case.[5] ...

Advisory Committee note, Rule 3004, Fed. R.Bankr.P. (1992). Thus, the debtor or the trustee may file a claim for any creditor who has not itself filed a claim by the time of the first meeting of creditors, but the debtor or trustee must do so within 120 days of that date (up to 30 days after the 3002(c) deadline). *See* Advisory Committee note to 1987 amendments, Rule 3004, Fed. R.Bankr.P. (1992). If the creditor files a proof of claim within the time provided in Rule 3002(c), the creditor's claim will supersede the debtor's or trustee's. By this scheme, then, the debtor or the trustee in a chapter 13 case can always be assured of having a claim on file for taxes, for example, even if the IRS has failed to file soon enough to be included in the debtor's chapter 13 plan.

■■■ Rule 3004 has its roots in equity (i.e., to spare a debtor from being "... deprived of an important benefit of the Code without any fault or omission on the debtor's part ..."). It is itself an exception to the general policy which underlies Rule 3002—prompt and even administra-

---

is important to recognize, as did the drafters of the Rules, that Chapter 13 is essentially distributional in character, not reorganizational. In practice, Chapter 13 trustees administer hundreds or even thousands of cases per month, usually computerizing their operation. Late claims cause almost as much administrative confusion in chapter 13 cases as they would in chapter 7 cases.

**5.** *See* 11 U.S.C. § 702(b) (permitting creditors with "allowed claims" to choose their own trustee at the first meeting of creditors).

tion of the estate for the benefit of creditors who have been diligent in protecting their rights. We should not, therefore, be too surprised that another rule of equity, Rule 9006(b), which permits relief from deadlines for cause upon a showing of excusable neglect, can be applied to the "deadline" set by Rule 3004 for debtors and trustees.[6]

The same logic does not apply to the ability of creditors to file late claims. A hard and fast deadline for creditor's claims has its roots not in equity but in the necessity for prompt and efficient administration of the case; untimely creditor claims simply undermine the distribution process. As it is, Rule 3002(c) *does* contain a few equitable exceptions, but an "exception" permitting late claims for "excusable neglect" would quickly swallow the rule, imposing an administrative cost on chapter 7 and chapter 13 cases directly contrary to the goal of "just, speedy and inexpensive determination of cases" and their "expeditious and efficient administration," said to be the chief purpose of the bankruptcy laws. Rule 1001, Fed.R.Bankr.P. (1992); *see also Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966); *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 346–47, 22 L.Ed. 636 (1874); *Ex parte Christy*, 44 U.S. (3 How.) 292, 312–14, 11 L.Ed. 603 (1845). The general authority in Rule 9006(b) granted courts to exercise their equitable powers to relieve parties from deadlines cannot be extended to Rule 3002(c), because limited exceptions are already specified within the body of the rule; permitting the general rule to apply would contradict the specific language within the

specific rule. Observed the Advisory Committee:

> Many rules which establish a time for doing an act also contain a specific authorization and standard for granting an extension of time and, in some cases, limit the length of an extension. In some instances it would be inconsistent with the objective of the rule and sound administration of the case to permit extension under Rule 9006(b)(1) ...

Advisory Committee Note, Rule 9006, Fed. R.Bankr.P. (1992); *see also In re Stern*, 70 B.R. 472, 475 (Bankr.E.D.Pa.1987) (permitting the "excusable neglect" standard of Rule 9006(b) to be used to relieve a creditor from the strict deadlines of Rule 3002(c) would destroy the objective of finality which Congress obviously intended to promote).

Given that the plain language of the Rule specifically prohibits a creditor from filing a claim after the deadline imposed under Rule 3002 unless one of the six exceptions is met, there is simply no basis for an extension of the excusable neglect standard to claims filed by creditors under Rule 3002; a bankruptcy court cannot exercise its equitable powers in derogation of specific authority to the contrary.[7]

Several courts have allowed a creditor to file a late proof of claim under circumstances outside the six exceptions listed in Rule 3002(c) where the creditor fails to receive notice of the pending bankruptcy case. *See United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990); *In re Yoder Company*, 758 F.2d 1114 (6th Cir.1985); *In re Barnett*, 42 B.R. 254

---

**6.** Debtors especially are cautioned to bear in mind that they will have a heavy burden to meet in order to establish cause and excusable neglect in order to file a claim for a creditor after the deadline imposed by Rule 3004. The debtor has 30 days beyond the claims deadline set by Rule 3002(c) to file a claim for a creditor, but the debtor need not wait until that deadline has passed. Debtors are permitted to file claims for creditors the day after the first meeting of creditors, if the creditor has not itself already filed. Debtors should also have every incentive to file a claim for a nonfiling creditor early rather than late, as the principle goal is to incorporate the creditor's claim in the plan and to then

discharge that claim upon completion of that plan. Debtors would therefore, as a matter of course, be expected to review the claims register to see whether the creditor had filed, and to do so early in the process so that the debtor's plan could accommodate the claim. *In re Davis*, 936 F.2d 771, 774 (4th Cir.1991); *see also* 11 U.S.C. § 1327. Mere inattention to this process is not "excusable neglect," and merely listing the creditor's claim in the schedules is not "cause." *See Davis, supra.*

**7.** *In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir. 1977).

(Bkrtcy.S.D.N.Y.1984) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)); *In re Moskowitz,* 35 B.R. 750 (S.D.N.Y. 1983). Where a creditor's basic entitlement to due process under the Constitution has been abridged, the rule of course cannot be enforced. U.S. Const., Amend. V; *City of New York v. New York, New Haven, & Hartford R.R.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953).[8] In the instant case, however, Adolph's has admitted receiving notice of the bankruptcy filings; the motion states that an employee misplaced the notices. Therefore, *City of New York* and its progeny are inapposite and cannot support Adolph's motion.

## CONCLUSION

Bankruptcy Rule 3002(c) is an absolute bar to late claims by creditors in chapter 13 cases, unless one of the six exceptions contained within the Rule is met (or unless a denial of constitutional due process can be demonstrated). None of the six exceptions have been satisfied in the instant case; accordingly, the motion for extension of time must be DENIED as a matter of law. So ORDERED.

---

**8.** Said the Supreme Court,
   The statutory command for notice embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed right.
   *City of New York,* 344 U.S. at 297, 73 S.Ct. at 301. The Sixth Circuit added in *Cardinal Mine Supply* that
   [t]he failure of the Bankruptcy Rules to provide relief to creditors who receive no notice of a bankruptcy and have no knowledge of it cannot deprive those creditors of their substantive right not to have their property rights taken away without notice.
*U.S. v. Cardinal Mine Supply, Inc.,* 916 F.2d at 1091. It is worth adding that both of these cases involved taxing authorities, which are not protected by the Constitution's Due Process clause. The courts found support for their rulings in statutory due process (which *does* extend to governmental entities) and "basic principle[s] of justice."