In re J.T. MORAN FINANCIAL CORP., et al., Debtor.

Eric KURTZMAN, Chap. 7 Trustee of J.T. Moran & Co., Inc., et al., Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., American International Group, Defendants.

Bankruptcy Nos. 90 B 20078, 90 B 20086 and 90 B 20087.

United States Bankruptcy Court, S.D. New York.

Nov. 12, 1992.

See also 145 B.R. 182.

Mait, Wang & Simmons, New York City, for National Union Fire Ins. Co.

Denise Savage, of counsel, Kurtzman & Haspel, Cascone, Cole & Savage, New York City, for trustee.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The insurance company defendants in this adversary proceeding commenced by the Chapter 7 trustee of the debtor, J.T. Moran Financial Corp., have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, as adopted by Federal Rule of Bankruptcy Procedure 7056. The defendants maintain that as a matter of law the trustee may not recover under a Security Dealer Blanket Bond (the "Bond"), issued by the defendant, National Union, to the debtor, a brokerage firm. The claim was originally filed by the debtor for an alleged loss which resulted when one of the debtor's stockbroker employees violated the debtor's established policy prohibiting registered representatives from trading for their own accounts in options without having sufficient liquid assets in their accounts to cover potential losses.

The defendants contend that the notice and proof of claim filed by the debtor were untimely under the terms of the insurance policy and Bond and that, as a matter of law, the policy did not cover the alleged loss because the policy had terminated before the loss was sustained and also because the employee's conduct did not constitute "dishonest or fraudulent acts" within the coverage of the policy.

## UNDISPUTED FACTS

1. The plaintiff was appointed the Chapter 7 trustee of J.T. Moran & Co., Inc. after the debtor's Chapter 11 case, which was filed on January 29, 1990, was converted for liquidation under Chapter 7 of the Bankruptcy Code. The debtor was a corporation engaged in the business of securities transactions and maintained its principal place of business in Pleasantville, New York.

2. Defendant, National Union, is a stock insurance company and underwriter, with its executive offices located at 70 Pine Street, New York, New York. Defendant, American International Group, Inc. ("American"), is a member of National Union and is located at the same address.

3. Until November 28, 1989, Mitchell L. Goldberg ("Goldberg") was a registered options principal and managing director employed by the debtor at its office in New York City. Goldberg maintained personal securities trading accounts with the debtor.

4. On Tuesday, November 14, 1989, the debtor's employee, Goldberg, violated an established policy of the employer prohibiting trading for his own account which left the account in an open position without sufficient liquid assets to cover potential losses.

5. The debtor's representatives discovered this open and uncovered position in Goldberg's account on the following morning, November 15, 1989. The trustee alleges that the debtor's representatives promptly demanded that Goldberg cover this open account, which he did immediately after attempting to explain the violation by stating that a corresponding sell order had not been executed. In any event, no loss is claimed as a result of this initial violation of policy on November 14, 1989.

6. Thereafter, on November 15 and 16, 1989, Goldberg again engaged in similar transactions which also left him in an open uncovered position and resulted in the loss of $388,804.39 for which the instant suit was brought.

7. On December 1, 1989, the debtor, through its attorneys, Scheffler, Kolinsky & Stein, filed a complaint against Goldberg in the United States District Court for the Southern District of New York based on the same transactions by Goldberg as those in the instant case. On December 14, 1989, Goldberg filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

8. On March 29, 1990, the Chapter 11 debtor commenced an adversary proceeding against Goldberg in the United States Bankruptcy Court for the Eastern District of New York, objecting to Goldberg's discharge because of his conduct with respect to the uncovered transactions and the debtor's loss in the sum of $388,804.39.

9. The debtor first provided notice to National Union of its loss as a result of the Goldberg transactions by letter from its attorneys, Scheffler, Karlinsky & Stein, to National Union dated and delivered on May 11, 1990. This letter states in relevant part as follows: "Such loss was due to Goldberg's dishonest and fraudulent securities trading activities, which resulted in a loss in his accounts in the above sum [$388,804.39]." The letter further states

> Please be further advised that the only materials which our client currently possesses relating to proof of this loss are (1) Goldberg's U–4, and (2) various tickets and trade confirmations respecting the fraudulent and dishonest trading activities in which Goldberg engaged. We are enclosing copies of such documents with this letter.

10. The Chapter 11 debtor provided its executed proof of loss form to National Union, sworn to August 7, 1990, with transmittal letter from Scheffler, Karlinsky & Stein, dated August 7, 1990. These items were received by National Union on August 9, 1990, nearly nine months after the debtor discovered Goldberg's uncovered securities transactions.

11. National Union issued its Securities Dealer Blanket Bond on November 1, 1989, which provides in pertinent part as follows:

### LOSS–NOTICE–PROOF–LEGAL PROCEEDINGS

**Section 4** ... At the earliest practicable moment after discovery of any loss hereunder the Insured shall give the Underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars.... Legal proceedings for recovery of any loss hereunder shall not be brought prior to the expiration of sixty days after such proof of loss is filed with the Underwriter nor after the expiration of twenty-four months from the recovery of such loss....

Discovery occurs when the Insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the Bond has been or will be incurred even though the exact amount or details of loss may not be then known.

Section 12—This bond shall be deemed terminated or cancelled as to any Employee:

(a) as soon as the Insured shall learn of any dishonest or fraudulent act on the part of such employee....

Bond.

The "FIDELITY" section of the Bond provides as follows:

**FIDELITY**

(A) Loss resulting directly from one or more dishonest or fraudulent acts of any Employee, committed anywhere and whether committed alone or in collusion with others, including loss of Property resulting from such acts of an Employee, which Property is held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefor.

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean *only dishonest or fraudulent acts committed by such Employee with the manifest intent:*

(1) to cause the Insured to sustain such Loss; and

(2) to obtain financial benefit for the Employee, or for any other person or organization intended by the Employee to receive such benefits other than salaries, commissions, fees, bonuses, promotion, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

Bond (emphasis added).

12. The Bond was not issued by defendant, American, but only by defendant, National Union, which has declined to pay the debtor's claim.

### DISCUSSION

In ruling on a motion for summary judgment, the court must review the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### Timeliness of the Claim

There is no dispute that the debtor delayed giving notice of the loss from Goldberg's proscribed securities transactions on November 15 and 16, 1989 until nearly six months later on May 11, 1990. Additionally, the debtor did not transmit a proof of loss form to National Union until August 9, 1990, nearly nine months after discovery of the loss. Hence, National Union reasons that the debtor and its Chapter 7 trustee in bankruptcy are time-barred because Section 4 of National Union's bond

expressly requires that written notice of a loss must be given "[at] the *earliest practicable moment* after discovery of the loss." Bond, at Section 4 (emphasis added). Additionally, the insured must furnish to the underwriter affirmative proof of loss with full particulars *"within six months* after such discovery...." *Id.* (emphasis added).

The trustee submitted an affidavit from the debtor's former attorney, Martin E. Karlinsky, who states that he was originally advised that no coverage existed as to Goldberg's misconduct. Furthermore, the debtor's financial affairs were in disarray, including time-consuming governmental investigations of the debtor's securities business, which culminated in the debtor's voluntary Chapter 11 petition being filed two months later on January 29, 1990. Thereafter, only three or four employees remained out of over 100 executives and over 1000 brokers. Business records and documents were removed to a warehouse. It was not until late April of 1990 that Karlinsky was able to come up with a copy of the insurance policy in question, which resulted in the attorney's letter of May 11, 1990 advising National Union of the loss, together with enclosed supporting documentation.

 In view of the fact that New York is the forum state, the New York choice of law principles will apply. *Von Kaulbach v. Keoseian,* 783 F.Supp. 170, 173 (S.D.N.Y. 1992). Under New York choice of law rules the jurisdiction having the greatest interest will be applied. *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *J. Zeevi & Sons, Ltd. v. Grindlays Bank (Uganda), Ltd.,* 37 N.Y.2d 220, 371 N.Y.S.2d 892, 333 N.E.2d 168, *cert. denied,* 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 (1975).

 For the purpose of interpreting the coverage of the insurance policy, reference must be made to New York law because that is where the policy was issued, the parties are located, the alleged triggering event occurred and where performance was expected to take place. Thus, the jurisdiction where a contract was made has a substantial interest in determining its application. *Von Kaulbach,* 783 F.Supp. at 174; *Recovery Consultants, Inc. v. Shih–Hsieh,* 141 A.D.2d 272, 275, 534 N.Y.S.2d 374, 375 (App.Div. 1st Dept.1988).

 Under New York law it has been held that the term "as soon as practicable" in an insurance policy of this type requires that written notice be given within a reasonable time under all the circumstances. *Deso v. London & Lancashire Indemnity Co. of America,* 3 N.Y.2d 127, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957); *Utica Mutual Ins. Co. v. Fireman's Fund Ins. Companies,* 748 F.2d 118 (2d Cir.1984). The reasonableness of the delay and the sufficiency of the excuse offered by the trustee, based on the events leading to debtor's bankruptcy case, are questions of fact which will bar summary judgment as to these points. *Jenkins v. Burgos,* 99 A.D.2d 217, 472 N.Y.S.2d 373 (1984); *Allstate Ins. Co. v. Moon,* 89 A.D.2d 804, 453 N.Y.S.2d 467 (1982). Whether or not the alleged chaos leading to the debtor's bankruptcy case is a justifiable excuse for the delayed notice should not be resolved as a matter of law. Similarly, whether or not the delayed submission of a proof of claim form more than six months after the debtor's discovery of the alleged loss is excusable and whether or not the written notice dated May 11, 1989, together with enclosed supporting documentation, will satisfy the requirement for submitting proofs of claims within six months of discovered losses, are also questions of fact which may not be determined by a motion for summary judgment.

### Insurance Coverage

 The Bond in question specifically defines the type of dishonest or fraudulent acts of employees of the debtor covered thereunder to mean "only dishonest or fraudulent acts committed by such Employee with the manifest intent ... (1) to cause the Insured to sustain such Loss; and (2) to obtain financial benefit for the Employee...." Fidelity bonds of this nature are not issued to cover reckless or improvident trading losses caused by employees of in-

sured securities firms, but only to limit protection under the bond to losses due to embezzlement or embezzlement-like acts. *Glusband v. Fittin Cunningham & Lauzon, Inc.*, 892 F.2d 208, 212 (2d Cir.1989); *Leucadia, Inc. v. Reliance Ins. Co.*, 864 F.2d 964, 972 (2d Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3160, 104 L.Ed.2d 1023 (1989). That a trader may have violated the insured's established policy or standing orders or committed a grave breach of the broker's fiduciary duty does not mean that such conduct falls within the operative language of the fidelity bond, where the faithless employee simply wanted to make money rather than cause the employer to lose money. *Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.*, 942 F.2d 1032 (6th Cir.1991). To invoke the operative language of the fidelity bond in question, the plaintiff trustee must plead and prove that the employee had a "manifest intent" to "cause the insured to sustain such loss"

> [The employee's] manifest intent was to make money, not to cause her employer to lose money. She intended to violate her standing orders, to be sure, but not for the purpose of causing a huge loss.

*Municipal Securities, Inc. v. Ins. Co. of North America*, 829 F.2d 7, 9 (6th Cir. 1987). *See also First Federal Savings & Loan Assoc. of Salt Lake City v. Transamerica Ins. Co.*, 935 F.2d 1164 (10th Cir. 1991). Where an employee will receive no benefit at all from the proscribed transaction, such as a bank clerk who submits fraudulent reports in connection with proposed loans to unrelated third parties, there can be a question of fact as to whether or not the employee intended to injure the bank by her misconduct. *First National Bank of Louisville v. Lustig*, 961 F.2d 1162 (5th Cir.1992). Thus, on one end of the spectrum, intent to cause a loss to the employer may be determined as a matter of law because an embezzlement-like act implies that the embezzler always has a manifest intent to cause the loss. *Glusband*, 892 F.2d at 212. On the other end of the spectrum, dishonest acts by employees which can only benefit such employees do not as a matter of law reflect a manifest

intent to cause a loss to the employer. *Municipal Securities*, 829 F.2d at 9. Unlike the *Lustig* case, which falls in the middle of the spectrum, Goldberg clearly engaged in the securities transactions solely for his own benefit, hoping to profit from the transaction.

■ In the instant case, the allegations in the complaint do not charge that the debtor sustained a loss as a result of embezzlement-like conduct on the part of a faithless employee. At most, the complaint charges that Goldberg violated an established policy of the debtor. Complaint, at ¶ 11. He failed to cover the potential losses while trading in his own accounts. Complaint, at ¶ 15. "Goldberg wrongly and improperly used his fiduciary position ... to cause trades in his own account." Complaint, at ¶ 19. "By reason of Goldberg's conduct, dishonesty, false promises and false representations he acquired property at the expense and cost of the plaintiff knowing that he would be unable to pay for some [sic] and causing plaintiff to suffer damaged [sic] thereby in amount of $388,-804.39." Complaint, at ¶ 20. "By reason of Goldberg's dishonest and fraudulent conduct while working as an employee of J.T. Moran, J.T. Moran suffered losses totalling $388,904.29 [sic]." Complaint, at ¶ 24.

Significantly, the complaint fails to allege that Goldberg engaged in the proscribed securities transactions with the intent "to cause the Insured to sustain such loss" as expressed in Section (a)(1) of the Fidelity section in the Bond. The complaint clearly charges Goldberg with violating established company policy and breaching his fiduciary duty by trading for his own account for the purpose of making money without covering his open trading accounts. This alleged intent was to make money if the purchased securities rose in value and not to hurt the debtor, because he expected to cover the open account. Indeed, the debtor admits that Goldberg covered his first improper transaction on November 14, 1989 so that the debtor did not sustain a loss from this first violation. The debtor's loss caused by Goldberg's fail-

ure to cover his second and third improper securities transactions occurred on November 15 and 16, 1989, respectively. Manifestly, Goldberg's objective was to make money for his own account without hurting the debtor, but unfortunately, he could not cover the ensuing losses when the securities failed to go up in value. His conduct violated company policy, *Municipal Securities*, 829 F.2d at 9, and constituted a grave breach of his fiduciary duty, *see Federal Deposit Ins. Corp.*, 942 F.2d at 1036, or might be viewed as reckless or improvident, *see Glusband*, 892 F.2d at 212, but in no event can his misconduct be characterized as an "embezzlement or embezzlement-like acts." *Id.* Therefore, the debtor's claim for Goldberg's losses does not fall within the pale of the Bond in question because Goldberg's securities trading did not manifest an intent to cause harm to the debtor.

 There is also another reason why the complaint fails to assert a viable claim. If Goldberg's proscribed securities transactions did qualify as dishonest or fraudulent acts within the meaning of the Bond (which they do not), the transactions of November 15 and 16, 1989 would not be covered by the bond because the bond would have been deemed terminated as to his conduct after the debtor discovered on November 15, 1989 his first improper transaction the previous day on November 14, 1989. The debtor permitted Goldberg to continue his brokerage activities because Goldberg covered the loss from his first violation of company policy. However, the Bond is not as tolerant of dishonest or fraudulent acts by the same employee. Section 12(a) of the Bond expressly states: "This bond shall be deemed terminated on or cancelled as to any Employee: (a) as soon as the Insured shall learn of any dishonest or fraudulent act on the part of such Employee...." Thus, after discovering Goldberg's dishonest or fraudulent November 14, 1989 securities transaction, the debtor permitted Goldberg to continue to engage in similar transactions, but such condonation did not bind National Union. There was no coverage under the Bond for Goldberg's subsequent violations of company policy, which

gave rise to the loss asserted in the complaint after the debtor discovered Goldberg's first violation.

CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). A motion for summary judgment is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. There are no genuine issues of material facts with respect to National Union's defense that the Fidelity bond in question does not cover the loss alleged in the complaint by the debtor and its Chapter 7 trustee.

3. National Union is entitled to summary judgment dismissing the complaint as requested in its motion.

SETTLE ORDER on notice in accordance with the foregoing.