**In re Michael G. KELLEY and Susan Kelley, Debtors.**

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER, Plaintiff,**

v.

**Michael G. KELLEY and Susan Kelley, Defendants.**

Bankruptcy No. 092–71408–511.
Adv. No. 092–7140–511.

United States Bankruptcy Court,
E.D. New York.

Dec. 6, 1993.

Bennett & O'Shea by James O'Shea, Southampton, NY, for debtors/defendants.

Berkman, Henoch, Peterson & Peddy, P.C. by Ronald M. Terenzi, Garden City, NY, for plaintiff.

## *OPINION*

MELANIE L. CYGANOWSKI,
Bankruptcy Judge:

In this adversary proceeding, both parties contest the dischargeability of a mortgage debt and have moved for summary judgment. The mortgagee, First Federal Savings and Loan Association of Rochester ("First Federal" or the "Bank"), contends that the debtors, Michael G. and Susan Kelley (the "Kelleys" or "Debtors"), made material misrepresentations on their mortgage loan application respecting their financial condition which render the mortgage debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). The Debtors assert that First Federal is judicially estopped from claiming that the mortgage debt is owed because it sought and received relief from the stay imposed by their bank-

ruptcy proceeding and foreclosed the mortgage.

### FACTUAL BACKGROUND

The Debtors filed a voluntary petition for relief under Chapter 7 on May 21, 1992.

First Federal is the first mortgagee on premises owned by the Debtors that is located at 10 Oak Drive, Sag Harbor, New York (the "Property"). On September 1, 1992, First Federal moved for relief from the automatic stay imposed by 11 U.S.C. § 362 to continue a foreclosure proceeding in the state court. In support of its motion, First Federal annexed an appraisal, dated March 17, 1992, which valued the Property at $415,000. First Federal asserted that the Debtors had not made any mortgage payments since July, 1991 and that the amount due on the mortgage and note as of August, 1992 was $352,-910.19. The Bank further stated that

> If the Debtors were to immediately sell the Premises for the appraised value, after paying First Federal's Mortgage, $1,660.00 to New York State representing the 'deed stamp' transfer tax, $20,750.00 to a real estate broker representing a five (5%) percent commission and after retaining $20,-000 for their 'homestead' exemption ... less than $20,000 remains. This remaining sum must be used to pay any real estate taxes, other closing costs or capital gains taxes before there is any benefit to the estate.

The Debtors did not oppose or otherwise appear in opposition to First Federal's motion, which was consequently granted by Order dated October 1, 1992 (the "October 1st Order").

Before the October 1st Order was entered, First Federal filed a complaint challenging the dischargeability of the mortgage debt. The complaint alleges that the Debtors executed a residential mortgage loan application on February 7, 1990 in which they knowingly misrepresented their income and assets and upon which First Federal relied to its detriment in making the mortgage loan. Consequently, First Federal seeks judgment in the amount of the mortgage debt, *i.e.*, $352,-910.19, and a declaration that that sum is nondischargeable. In their answer, the Kelleys deny the material allegations of the complaint.

At some point after the complaint was filed and after First Federal obtained relief from the stay, the Property was sold at foreclosure.

### THE PENDING MOTIONS

On April 12, 1993, First Federal moved for summary judgment. In support of its motion, First Federal annexed an affidavit by David L. Walsh, Manager of Lending Operations for First Federal, sworn to April 5, 1993, ("Walsh Aff."). First Federal also annexed copies of the various loan applications, the Debtors' tax returns and a transcript of a deposition taken of the Debtors. First Federal also submitted a statement of material facts not in dispute, as required by Rule 22(b) of the Local Rules of the Bankruptcy Court for the Eastern District of New York (the "Rule 22(b) Statement").[1]

The Debtors cross-moved for summary judgment. The cross-motion is not supported by an affidavit; rather, the Debtors annexed an unsworn "Application ... in Support of Cross Motion for Summary Judgment and Opposition to Motion of First Federal Savings and Loan." The only exhibit to their motion is a copy of the motion for relief from stay by First Federal. The Debtors did, however, submit a Rule 22(b) Statement.

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. *All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.* (emphasis supplied)

---

1. Under Local Rule 22(b), a motion for summary judgment must be supported by a statement of uncontroverted facts. The Rule provides:
 (b) Motions for Summary Judgment. Upon any motion for summary judgment, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.

*First Federal's Rule 22(b) Statement*

The Rule 22(b) Statement submitted by First Federal states that the following facts are undisputed:

On February 7, 1990, First Federal received a handwritten residential mortgage loan application signed by the Kelleys. The application indicated that (i) the Kelleys' monthly income totalled $16,666; and (ii) their assets included stocks and bonds valued at $10,500, a business with a net worth of $500,000, and personal property worth $50,000. The application also contained the following statement:

> AGREEMENT: The undersigned applies for the loan indicated in this application to be secured by a first mortgage or deed of trust on the property described herein, and represents that the property will not be used for any illegal or restricted purpose, and that all statements made in this application are true and are made for the purpose of obtaining the loan. Verification may be obtained from any source named in this application ... I/we fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1014.

The Debtors' signatures were directly beneath this recital.

A closing on the loan took place on May 23, 1990 at which a type-written version of the prior hand-written application was presented to the Kelleys for signature. The type-written application was identical to the hand-written version except that it additionally stated that the Debtors possessed a vested interest in a retirement fund valued at $550,000. The application contained the same recital noted above as the hand-written version and was signed by the Kelleys on May 23, 1990.

At their deposition, the Kelleys testified that they signed the hand-written application in blank and that nothing had been filled out as of that time. The Kelleys further testified that they knew that the application would be completed and then given to the Bank, following which the Bank would rely on the information set forth in the application in deciding whether to grant them a loan. The Kelleys conceded that they were shown the application at the closing, but that they "did not sit and read all the documents."

The Debtors also testified at their deposition that they did not own stocks or have a vested interest in any retirement fund, and that their personal property and business were in fact worth less than the values attributed to them on the application. They further testified that their monthly income was "maybe like $400 a month" at the time of the loan.

In addition, the Kelleys testified that they had obtained the mortgage through Ray Perry, a mortgage broker. They stated at their deposition that the loan application contained information that they had supplied to Mr. Perry, "everything except for income." When asked whether the information regarding the stocks and bonds was correct, Mrs. Kelley replied that she didn't "know where that came from." According to the Kelleys, the loan application was submitted to First Federal by the broker on their behalf. The Kelleys further testified that they had no direct contact with the Bank until the closing.

The Kelleys' tax returns for the years 1989 and 1990 show that their adjusted gross income for those years was $33,125 and $31,646, respectively.

In his affidavit, Walsh states that the loan in question was a so-called "no income-verification loan." Walsh Aff. ¶ 3. This means that the Bank does not ordinarily verify income information supplied by the loan applicant, instead relying on the information presented in the application. Each application contains a provision in which the applicants sign and thereby affirm the truthfulness of the information contained therein. Walsh also states in his affidavit that the Bank relied upon the Kelleys' application in extending the loan. *Id.* Moreover, Walsh avers that if the Bank had been aware of the true financial condition of the Kelleys, the Bank would not have extended the loan. This is because the application, if it had been truthful, "would not have met the banks' [sic]

criteria for making such a loan and would therefore have been rejected."

*The Kelleys' Rule 22(b) Statement*

The Debtors' Rule 22(b) Statement identifies the following facts "as to which exists a genuine issue to be tried":

1. Did First Federal Savings and Loan reasonably rely on the financial representation submitted by the Debtors even though this was a no income verification loan. Could First Federal Savings and Loan have verified the information given by the Debtors through other sources, (i.e.: Filed Tax returns)?

2. Has First Federal Savings and Loan sustained any damages as a result of the foreclosure of the Debtors property ... First Federal Savings and Loan in August of 1992 submitted an appraisal to the Bankruptcy Court, stating the secured property was worth $415,000 as of March 17, 1992. This figure was approximately $60,000 more than the Mortgage due at the time of the filing of the debtors Bankruptcy petition on May 21, 1992.

The Debtors' Statement also lists the following facts as to which there exist no genuine issue:

A. The debtors filed a Chapter 7 petition on May 21, 1992.

B. The Plaintiff brought a motion to lift the stay on September 17, 1992. That application ... states that the debtors owed approximately $352,000.00.... First Federal Savings and Loan had the premises appraised at $415,000.00. Therefore, First Federal Savings and Loan, by its own admission has sustained no damages.

*Summary of Argument*

In response, First Federal concedes that the Property was sold at foreclosure and that, consequently, the only effect of declaring the debt non-dischargeable is that it may pursue a deficiency judgment. The Bank has therefore withdrawn that portion of its

complaint seeking a monetary judgment in the full amount due on the mortgage.

First Federal argues, however, that the Kelleys do not controvert any of the factual allegations of the complaint, but only contest whether any deficiency is owed to the Bank.

In further support of its motion, First Federal annexes two appraisals of the Property, both conducted in April, 1993, which value the Property at $255,000 and $250,000, respectively. However, First Federal urges that the value of the Property "is not an issue which is relevant as to whether the Debt should be excepted from discharge based on fraud pursuant to 11 U.S.C. § 523. The Debtor[s] will have the opportunity to address this issue in State Court should First Federal pursue the deficiency judgment."

The Debtors contend that First Federal, having attributed a value to the Property of $415,000 in the context of the motion for relief from stay, is now judicially estopped from claiming a different value.

*DISCUSSION*

Rule 56 of the Federal Rules of Civil Procedure [2] states that a motion for summary judgment shall be granted

[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56.

Accordingly, in ruling upon a summary judgment motion, the Court must determine whether a genuine issue of fact exists; it is not the Court's province at this stage of the proceeding to resolve disputed issues of fact if any are demonstrated to exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d

**2.** Rule 56 governs a motion for summary judgment in an adversary proceeding by virtue of

Federal Rule of Bankruptcy Procedure 7056.

538 (1986). Moreover, the Court must draw all ambiguities and reasonable inferences in favor of the non-moving party. *Thornton v. Syracuse Savings Bank,* 961 F.2d 1042 (2d Cir.1992); *Levin v. Analysis & Technology, Inc.,* 960 F.2d 314 (2d Cir.1992).

 The movant carries the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Kurtzman v. National Union Fire Ins. Co.,* 147 B.R. 335, 338 (Bankr.S.D.N.Y. 1992); *CPY Co. v. Ameriscribe Corp. (In re Chas P. Young Co.),* 145 B.R. 131, 135 (Bankr.S.D.N.Y.1992). The summary judgment motion should be granted only if (1) there is no genuine issue as to any material fact, and (2) the movant is entitled to judgment as a matter of law. Otherwise, it must be denied. *Anderson,* 477 U.S. at 247–52, 106 S.Ct. at 2509–12; *Hamilton v. Smith,* 773 F.2d 461, 466 (2d Cir.1985). When a motion for summary judgment is made and supported by the movant, Rule 56(e) requires the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[3] Fed.R.Civ.P. 56(e). The non-moving party may not defeat a properly supported motion by relying on self-serving and conclusory statements concerning the nature of the facts, and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

 Local Rule 22(b) is almost identical to Rule 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts. Factual assertions in a statement submitted pursuant to these rules are deemed admitted unless they are "directly contradicted" by an opposing statement. *National Union Fire Ins. Co. v. Antony,* No. 87 CIV. 1310, 1988 WL 49040, at *7 (S.D.N.Y. May 9, 1988); *see also Star–Kist Foods, Inc. v. Goldstein,* No. 87 CIV. 2377, 1988 WL 132844 at *4 (S.D.N.Y. Dec. 9, 1988) (papers opposing summary judgment motion must "isolate, focus and properly controvert the matters set forth" in a 3(g) statement). Perfunctory statements, vague charges and conclusory allegations made in an opposition brief are not enough to defeat a motion for summary judgment. *Bank of China v. Chan,* No. 88 CIV. 0232 MBM, 1990 WL 53007 (S.D.N.Y. April 23, 1990), *rev'd in part on other grounds,* 937 F.2d 780 (2d Cir.1991); *Hysell v. Mercantile Stores Co.,* 736 F.Supp. 457 (S.D.N.Y.1989).

## A. *JUDICIAL ESTOPPEL*

 First, the mere fact that the deficiency, if any, has yet to be determined by the state court does not preclude this Court from deciding whether the potential deficiency judgment is dischargeable. Section 523 of the Bankruptcy Code provides that certain "debts" are excepted from discharge. 11 U.S.C. § 523. The term "debt" is defined in 11 U.S.C. § 101(12) as "liability on a claim." "Claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Thus, bankruptcy courts may determine whether unliquidated debts are dischargeable. In doing so, bankruptcy courts should address only the issue of dischargeability and not consider the extent of damages arising from the underlying debt. *In re Stelweck,* 86 B.R. 833 (Bankr.E.D.Pa. 1988), *aff'd,* 108 B.R. 488 (E.D.Pa.1989).

 Here, however, the Debtors argue that First Federal is judicially estopped from claiming that a deficiency may arise and, consequently, that the Bank has been damaged by the Debtors' alleged fraud. The doctrine of judicial estoppel prevents a party from successfully asserting one position to its

---

**3.** Fed.R.Civ.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

own advantage, obtaining relief from a court based on that position and then subsequently assuming a contradictory position for its further advantage. In other words, the doctrine "prevents a party from playing 'fast and loose' with the judicial system." *In re Woolley's Parkway Center, Inc.,* 147 B.R. 996 (Bankr.M.D.Fla.1992).

■ Several recent cases have recognized the difficulty of applying the doctrine of judicial estoppel to valuation questions which commonly arise in the bankruptcy context. *Id.; In re Miller & Rhoads, Inc.,* 146 B.R. 950 (Bankr.E.D.Va.1992). At least one court has held that "general statements of the law on judicial estoppel, while supported by logic and by respectable authorities ... have no relevance and applicability to valuation of property in a case under Title 11...." *In re Woolley's Parkway Center, Inc.,* 147 B.R. 996, 1001 (Bankr.M.D.Fla.1992). This reasoning is based on the fact that the value of property may decline between the time a motion for relief from stay is filed in the bankruptcy court (which is often quite early in the case) and the time the state court ultimately enters a judgment of foreclosure and sale and entertains an application for a deficiency judgment. Illustrative of this notion is that the appraisal annexed to First Federal's motion for relief from stay (valuing the Property at $415,000) was conducted in March 1992, whereas the appraisals conducted in connection with the state court proceedings (valuing the Property at $250–255,-000) were done in April 1993.

Secondly, the position of First Federal at the time of its lift-stay motion and at this time are not so contradictory as to warrant application of the doctrine of judicial estoppel. At the time of its lift-stay motion, the Bank contended that its interest was not adequately protected because there was insufficient equity in the Property. First Federal now contends that there is even less equity.

The Court also notes that a specific value of the Property was not given at the time of the lift-stay motion. Indeed, the issue was uncontested. Rather, the Court determined that there was cause to lift the automatic stay, largely based on the Debtors' failure to make any mortgage payments for thirteen months.

For these reasons, the Court concludes that the defense of judicial estoppel fails as a matter of law. First Federal is not precluded from asserting that a deficiency judgment may arise from the state court foreclosure.

**B. SUMMARY JUDGMENT UNDER § 523(a)(2)(B)**

11 U.S.C. § 523(a)(2)(B) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

■ The burden is on the plaintiff at trial to establish each of the elements of the statute by a preponderance of the evidence. *In re Reisman,* 149 B.R. 31 (Bankr.S.D.N.Y. 1993); *In re Balzano,* 127 B.R. 524 (Bankr. E.D.N.Y.1991); *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Therefore, First Federal must establish the absence of any genuine issue of material fact as to each of the elements of its claim.

To begin, the Debtors have failed to submit any facts admissible in evidence in support of their cross-motion. Nor have they submitted any facts admissible in evidence that controvert the Bank's statement of facts.

■ Because First Federal properly supported its motion for summary judgment with evidentiary affidavits, the Debtors may

not rest upon the denials in their answer. Fed.R.Civ.P. 56(e). To defeat a motion for summary judgment, the Debtors must put forth "specific facts showing that there is a genuine issue for trial." *Id.* If they do not, "summary judgment, if appropriate, shall be entered against" them. *Id.* Although factual allegations supported by affidavits or other evidence made by the party opposing the motion must be regarded as true and viewed in the light most favorable to the non-movant, *Cartier v. Lussier*, 955 F.2d 841 (2d Cir.1992), the Court concludes that the Debtors have not set forth any specific facts that controvert First Federal's contentions. Accordingly, pursuant to Fed.R.Civ.P. 56(e) and Local Rule 22(b), the Court finds that the Bank's facts as presented in support of their motion are uncontroverted.

That does not, however, end the inquiry. The Court must nonetheless determine whether summary judgment in favor of First Federal is "appropriate."

■ It is undisputed that the Debtors signed the typewritten loan application which stated that the Debtors (i) had a monthly income of $16,666, (ii) stocks and bonds worth $10,500, (iii) a business worth $500,000, (iv) personal property valued at $50,000, and (v) a vested interest in a retirement fund worth $550,000. The loan application constituted "a statement in writing respecting the Debtors' financial condition" within the meaning of Section 523, *i.e.*, a statement respecting the income and assets of the Debtors. Although the Debtors testified at their deposition that they had signed an uncompleted loan application, they admitted that they were shown a completed copy of the document at closing.

■ First Federal need not establish that the document constituting the false statement was entirely written or prepared by the Debtors. It is sufficient, as a matter of law, that the Debtors either wrote, signed or adopted such statement to conclude that the document was "written" by them. *In re Boice*, 149 B.R. 40 (Bankr.S.D.N.Y.1992). Thus, the signatures of the Kelleys on the loan application are sufficient to satisfy the writing requirement. *In re Granovetter*, 29 B.R. 631 (Bankr.E.D.N.Y.1983). By signing

the loan application, the Debtors adopted it as their own and used it to obtain a mortgage loan.

■ A materially false statement under 11 U.S.C. § 523(a)(2)(B) is one which is substantially inaccurate, *In re Reisman*, 149 B.R. 31, 37 (Bankr.S.D.N.Y.1993), with respect to information which would have affected the creditor's decision-making process. *In re Boice, supra.* The testimony of the Debtors at their deposition establishes that there is no genuine issue with respect to the falsity of the statements respecting their income and assets. Nor is there a genuine issue as to whether such information is material. The Debtors concede that they knew the loan application that they signed in blank would ultimately be completed and given to the Bank which would then review it.

■ The Debtors have also failed to raise an issue of fact concerning whether the Bank relied on the loan application. The Bank demonstrated that it used and relied on the information in the application to make its decision, and that it would not have extended the loan if it had known the true set of facts. At their deposition, the Debtors admitted that they knew that the Bank would use the information furnished on the loan application in determining whether to extend the loan. The Debtors further admitted that they knew they were applying for a "no income-verification" loan.

In the face of the Bank's evidentiary assertions, the Debtors may not rely upon the general denials in their answer nor upon the conclusory allegations in their Rule 22(b) Statement. Particularly in view of their admissions, the Debtors have failed to set forth any disputed issues of material fact.

■ Finally, the Court concludes that no genuine issue of material fact exists as to whether the Kelleys possessed the "intent to deceive" within the meaning of Section 523. The requisite degree of intent may be inferred from the circumstances surrounding the transaction. *In re Gould*, 73 B.R. 225 (Bankr.N.D.N.Y.1987). Reckless indifference or a disregard for the accuracy of a financial statement is sufficient to establish

**36**

the requisite intent. *Id.* No reasonable juror could conclude that the Kelleys did not recklessly submit financial statements which they knew were false. The Kelleys testified that they knew the Bank would rely upon the information in the application, but that they did not read the loan application before signing it. The Debtors' failure to read the document, in and of itself, constitutes a reckless disregard for its accuracy, *In re Rodriguez*, 29 B.R. 537, 541 (Bankr.E.D.N.Y.1983), and no rational juror could conclude otherwise.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and the parties to this core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(I).

2. The defense of judicial estoppel fails as a matter of law.

3. First Federal has established that there are no genuine issues of material fact as to the elements of its claim upon which it would bear the burden of proof at trial. Fed. R.Bankr.P. 7056.

4. First Federal's motion for summary judgment is granted.

5. The Debtor/Defendants' cross-motion for summary judgment is denied.

6. Any deficiency judgment which may arise as a result of the foreclosure proceeding is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

7. First Federal is awarded its costs only.

Settle separate Order and Judgment consistent with this Opinion.